**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

**FILED
MAY 0 9 2014**


CLERK

| | |
|---|---|
| ROSENBAUER AMERICA, LLC; ROSENBAUER MINNESOTA, LLC (f/k/a GENERAL SAFETY FIRE APPARATUS, LLC); ROSENBAUER AERIALS, LLC; and DELMARVA PUMP CENTER, INC. d/b/a DPC EMERGENCY EQUIPMENT, <br><br> Plaintiffs, <br> v. <br><br> SPARTAN MOTOR CHASSIS, INC.; SPARTAN CHASSIS, INC.; and SPARTAN MOTORS, INC., <br><br> Defendants. | Civ. No. 14-4075 <br><br><br> **COMPLAINT** |

Comes now Plaintiffs, Rosenbauer America, LLC ("Rosenbauer America"), Rosenbauer Minnesota, LLC (f/k/a General Safety Fire Apparatus, LLC) ("Rosenbauer Minnesota"), Rosenbauer Aerial, LLC ("Rosenbauer Aerial") (collectively the Rosenbauer Plaintiffs will be referred to as "Rosenbauer"), and Delmarva Pump Center, Inc. d/b/a DPC Emergency Equipment ("DPC") and for their complaint against Defendants, Spartan Motors Chassis, Inc., Spartan Chassis, Inc., and Spartan Motors, Inc. (collectively "Defendants" or "Spartan"), hereby state and allege as follows:

## THE PARTIES

1. Rosenbauer America is a limited liability company formed under the laws of Delaware with a principal place of business in Lyon, South Dakota.

2. Rosenbauer Minnesota (f/k/a General Safety Fire Apparatus, LLC) is a limited liability company formed under the laws of Delaware with a principal place of business in Minnesota.

3. Rosenbauer Aerials is a limited liability formed under the laws of Delaware with a principal place of business in Nebraska.

4. DPC is a corporation organized under the laws of Delaware with a principal place of business in Delaware.

5. Upon information and belief, Defendants, Spartan Motors Chassis, Inc., Spartan Chassis, Inc., and Spartan Motors, Inc., are all corporations organized and existing under the laws of Michigan with their principal places of business in Michigan.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the subject of these claims pursuant to 28 U.S.C. § 1332 due to the complete diversity of citizenship of the parties as demonstrated above and an amount in controversy in excess of $75,000.

7. The Court furthermore has jurisdiction over the subject of these claims as such claims arise, in whole or in part, out of Defendants' transaction of business, entering into contracts, entering into negotiations to contract, and participating in litigation involving the subject of these claims within the State of South Dakota as more specifically set forth below.

8. Venue for this suit lies in the United States District Court for the District of South Dakota, Southern Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred within the Southern Division of the District of South Dakota as more specifically set forth below.

## FACTUAL BACKGROUND

### Rosenbauer Manufactures and Sells Products through Its Dealers

9. Rosenbauer America, which has its principal place of business in South Dakota, is the parent company for a number of subsidiaries.

10. Rosenbauer America and its subsidiaries, including Rosenbauer Minnesota and Rosenbauer Aerials, are engaged in the manufacturing of fire trucks, aerials, airport fire equipment, and various components and apparatus for fire and emergency vehicles.

11. The manufacturing process for each vehicle begins with the design, purchase, and integration of a custom truck chassis, which is a rectangular-shaped, front-end part of the fire truck consisting of all of the essential automotive parts of the truck.

12. Defendants sell custom chassis.

13. After Rosenbauer receives the chassis, the body of the truck is then further configured and manufactured to transform the truck chassis into an operational fire-fighting vehicle.

14. Rosenbauer primarily sells its products through a series of dealers, which are located throughout the United States and in certain foreign countries.

15. It is Rosenbauer's custom and practice to enter into contracts with municipalities to sell fire trucks and/or emergency apparatus equipment through its local dealers.

16. It is the custom and practice of the fire apparatus industry for a manufacturer's dealer to enter into a contract with the municipality to sell the manufacturer's products to the municipality or other end-user.

17. DPC is a Rosenbauer dealer.

**Defendants Breached the Dealership Agreement**

18. In approximately 1985, Rosenbauer and Defendants entered into an oral and implied dealership agreement whereby Rosenbauer would purchase custom truck chassis from Spartan ("Dealership Agreement").

19. The terms and conditions of the Dealership Agreement involved the sale of custom truck chassis by Spartan through its dealer, Rosenbauer, to third-parties such as public municipalities, airports, fire departments, businesses, and various countries throughout the world.

20. Throughout the years, the parties have renewed and amended the Dealership Agreement.

21. Demand for Rosenbauer's products increased over time and, as a result, Rosenbauer decided that it would start manufacturing chassis to meet its customers' demands.

22. Rosenbauer informed Defendants of its plan to manufacture chassis multiple times.

23. Defendants were aware of Rosenbauer's plan to start manufacturing chassis and, until December 16, 2011, never protested Rosenbauer's plan to manufacture chassis.

24. In a letter dated December 16, 2011, Defendants terminated, without cause, their contractual relationship with Rosenbauer.

25. In December of 2011, Rosenbauer brought suit against Defendants in this Court in an action entitled *Rosenbauer et al. v. Spartan Motors Chassis, Inc. et al.*, Civ. 11-4190 (D.S.D.) ("2011 Action").

26. Rosenbauer alleged breach of contract, breach of the duty of good faith, violations of South Dakota's Dealer Protection Act (SDCL Ch. 37-5), estoppel, tortuous interference with

business relationships, intentional misrepresentations, fraud and/or constructive fraud, deceit, and asserted a claim for punitive damages against Defendants.

27. On January 4, 2012, Rosenbauer moved for a preliminary injunction to enjoin Defendants from continuing to breach the Dealership Agreement.

28. After Rosenbauer moved for a preliminary injunction, the parties entered into settlement negotiations and, as a result, were able to settle their contractual dispute.

**The Parties Executed the Settlement Agreement**

29. As part of the settlement, the parties executed a Settlement Agreement and Release ("Settlement Agreement") on or about February 8, 2012.

30. Defendants have, over the years, transacted business with Rosenbauer within South Dakota, participated in negotiations to resolve the 2011 Action, and entered into the Settlement Agreement, which was at least partially executed in South Dakota.

31. The Settlement Agreement, by its own terms, is governed by South Dakota law. *Settlement Agreement* § 9.

32. Pursuant to the "Business Terms" of the Settlement Agreement, which were attached as Exhibit B to the Settlement Agreement, Defendants agreed to continue supplying Rosenbauer with custom chassis for "Multi-year Contracts."

33. "Multi-year Contracts" were specifically defined in the Settlement Agreement to include all contracts identified in a list of "ongoing or multi year contracts, bids, quotes or potential obligations" which list was generated in connection with the 2011 Action and attached as the last page of Exhibit B to the Settlement Agreement.

5

34. Included on such list, was the contract for sales to Baltimore County, Maryland with DPC as the dealer. Such contract was also identified as a "multi year" contract with an "option to purchase more."

35. The Settlement Agreement was amended on or about June 5, 2012, in the "First Amendment to Settlement Agreement and Release and Agreement and Release of Crimson Fire, Inc." ("First Amendment"), which primarily resolved a dispute between the parties relating to Rosenbauer's EZ Load Horsebed apparatus.

36. On or about March 26, 2013, the parties executed the "Amendment to Settlement Agreement and Release" ("Second Amendment").

**Defendants Agreed to Supply Spartan Chassis for Montgomery County "Tag On" Order**

37. A tag on order occurs when a governmental entity tags on or bridges to a contract of another governmental entity that has an existing Multi-year contract with Rosenbauer.

38. The process of tag on orders is a common and accepted practice within the fire and emergency response apparatus industry.

39. A tag on order allows a municipality to avoid the expensive and time-consuming bid process for receiving, reviewing, and accepting bids for fire and emergency apparatus products.

40. Many municipalities, including Montgomery County in Maryland, have specific statutes, regulations, code provisions, etc. which allow the municipality to tag on to another municipality's contract and/or bid.

41. The Second Amendment modified the "Business Terms" of the Settlement Agreement to specifically provide that Defendants would provide chassis for a tag on order for Baltimore County: "Baltimore County Tiller – Spartan Chassis agrees to provide one aerial tiller

6

cab and chassis as a tag on order on specifics and terms to be agreed upon. This is a one-time order." *Exhibit C to Second Amendment* at ¶ 3.

42. The agreement by Defendants to provide chassis for a Baltimore County tag on order was further acknowledged in an email from Spartan/Dennis Schneider to Rosenbauer/Harold Boer dated March 1, 2013, in which Spartan acknowledged that it would support the tag on order and agreed to provide a custom chassis pursuant to such tag on order.

43. In 2011, Baltimore County, Maryland engaged in a bid process to secure fire apparatus products and distributed a "Request for Bid No. B-475, Truck, Fire, Custom, Ladder, Tractor Drawn, 100 Foot Aerial, as Specified" ("Baltimore Bid").

44. The Baltimore Bid included a mandate that Rosenbauer would agree to a cooperative purchase by another county or "tag on" order:

> Acceptance of this bid and submission of appraisal is an agreement to extend the same prices, terms and conditions to the Baltimore County Board of Education, Baltimore County Public Library, and Community Colleges and any other Governmental agency include Baltimore city and other cities, *counties* and public or quasi-public agency that receives government funds, requiring these commodities and/or services.

*Baltimore Bid* at p. 19, § 16.1 (emphasis added).

45. Rosenbauer, through its dealer DPC, secured the bid for Baltimore County and received Purchase Order # 00004922 dated June 15, 2012.

46. As stated above, the Baltimore County contract was one of the listed Multi-year contracts in the Settlement Agreement, meaning that Defendants agreed to provide all chassis necessary for Rosenbauer to fulfill its contract with Baltimore County.

47. After Rosenbauer agreed to provide fire trucks to Baltimore County, Montgomery County, Maryland sought to buy new fire trucks and other fire apparatus equipment.

Case 4:14-cv-04075-KES   Document 1   Filed 05/09/14   Page 8 of 13 PageID #: 8

48. In lieu of engaging in an expensive and time-consuming bid process, Montgomery County tagged on to Baltimore County's bid.

49. On or about March 20, 2014, Rosenbauer, through its dealer DPC, entered into an agreement with Montgomery County whereby Rosenbauer would provide tractor-drawn aerial ladder trucks to Montgomery County ("Montgomery Agreement").

50. Rosenbauer America would have manufactured some of the component parts for the products ordered pursuant to the Montgomery Agreement.

51. The Montgomery Agreement specifically acknowledged that the agreement was a tag on or "bridge" contract for the Baltimore Agreement:

> In accordance with Montgomery County Procurement Regulations, Code of Montgomery County Regulations (COMCOR), Section 11B.00.01, Section 4.1.15 and Chapter 11B-42 of the Montgomery County Code, (2004), a bridge contract is being entered into between the Contractor and the County. The contract is for materially the same goods and services being provided to Baltimore County, Maryland at the same prices being charged to Baltimore County, Maryland under the contract (Purchase Order #00004922) between the Contractor and Baltimore County, Maryland. The contract between the Contractor and Baltimore County, Maryland was awarded as a result of adequate competition.

*Montgomery Agreement* at § 1.

52. The Montgomery Agreement incorporates numerous provisions from the Baltimore Agreement, including the scope of services and pricing provisions. *Montgomery Agreement* at §§ 2, 3.

**Defendants Breached the Terms of their Contract**

53. In order to comply with its contractual requirements under the Montgomery Agreement and to confirm its ability to place a purchase order with Montgomery County, Rosenbauer contacted Defendants to place a purchase order for Spartan chassis.

8

DOCS-#4112737-V4

54. From January of 2014 until April of 2014, Rosenbauer attempted to contact Defendants multiple times through phone calls, in person meetings, and emails to confirm Rosenbauer's ability to place a purchase order with Montgomery County.

55. Rosenbauer explained to Defendants that time was of the essence for Montgomery County and, therefore, requested a confirmation from Defendants that they would supply Spartan chassis as required pursuant to the Settlement Agreement.

56. On April 25, 2014, Rosenbauer again contacted Defendants to confirm whether Spartan would provide chassis in order for Rosenbauer to meet its contractual requirements under the Montgomery Agreement.

57. On April 28, 2014, Defendants, via email correspondence from Mike Bowman, responded to Rosenbauer that Defendants would not supply chassis for Montgomery County, even though Montgomery County was a tag on contract for Baltimore County, an approved Multi-year contract under the Settlement Agreement.

58. Defendants negotiated for a resolution to the Montgomery County issue, at least in part, in South Dakota.

59. Based on Defendants' representations in the April 28 email, Rosenbauer informed Montgomery County that it would be unable to supply the required products.

60. Within days after Rosenbauer informed Montgomery County that it would be unable to supply Spartan chassis, Defendants changed their position and agreed to provide Spartan chassis for the Montgomery County order.

61. On May 6, 2014, Rosenbauer and DPC informed Montgomery County of Defendants' change of mind and used all reasonable efforts to reinstate the Montgomery Agreement.

62. On May 7, 2014, Montgomery County confirmed that it had already started the mutual contract termination process and would be unable to reinstate the Montgomery Agreement.

63. Plaintiffs have suffered damages resulting from Defendants' actions through the loss of sales to Montgomery County, in excess of $75,000.

## COUNT 1: BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING (ROSENBAUER AMERICA, ROSENBAUER MINNESOTA, AND ROSENBAUER AERIALS)

64. Plaintiffs reallege the above-stated paragraphs as if fully set forth herein.

65. The Settlement Agreement is a consensual contract whereby Defendants, in exchange for valuable consideration, agreed to provide chassis to Rosenbauer for all Multi-year contracts and tag on contracts to those Multi-year contracts.

66. Rosenbauer America and Rosenbauer Minnesota entered into the Settlement Agreement on their own behalf and on behalf of any subsidiaries, including but not limited to Rosenbauer Aerials.

67. Rosenbauer has complied with all of its obligations under the Settlement Agreement.

68. Defendants' refusal to supply chassis to Montgomery County in a timely manner pursuant to the Montgomery Agreement constitutes a material breach of the Settlement Agreement.

69. By entering into the Settlement Agreement, Defendants owe Rosenbauer an implied duty of good faith and fair dealing.

70. Defendants breached such duty in failing to comply with their duties pursuant to the Settlement Agreement.

71. Rosenbauer has suffered damages as a result of Defendants' breach of contract and duty of good faith and fair dealing.

## COUNT 2: BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH
## (DPC AND/OR ROSENBAUER AERIALS)

72. Plaintiffs reallege the above-stated paragraphs as if fully set forth herein.

73. The Settlement Agreement is a consensual contract whereby Defendants, in exchange for valuable consideration, agreed to provide chassis to Rosenbauer for all Multi-year contracts and tag on contracts to those Multi-year contracts. Rosenbauer and Spartan intended the Settlement Agreement to expressly benefit Rosenbauer's subsidiaries and dealers.

74. Rosenbauer Aerials is a Rosenbauer subsidiary.

75. DPC is a Rosenbauer dealer and was specifically acknowledged to be a Rosenbauer dealer by Defendants in Exhibit B to the Settlement Agreement.

76. DPC and Rosenbauer Aerials are third-party beneficiaries of the terms of the Settlement Agreement.

77. DPC and Rosenbauer Aerials are in privity of contract with Defendants.

78. Rosenbauer has complied with all of its obligations under the Settlement Agreement.

79. Defendants' refusal to supply chassis to Montgomery County in a timely manner pursuant to the Montgomery Agreement constitutes a material breach of the Settlement Agreement.

80. By entering into the Settlement Agreement, Defendants owe Rosenbauer an implied duty of good faith and fair dealing.

81. Defendants breached such duty in failing to comply with their duties pursuant to the Settlement Agreement.

82. DPC and/or Rosenbauer Aerials have suffered damages as a result of Defendants' breach of contract and duty of good faith and fair dealing.

## COUNT 3: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP, AN EXPECTANCY OF A BUSINESS RELATIONSHIP, AND/OR A CONTRACTUAL RELATIONSHIP (ALL PLAINTIFFS)

83. Plaintiffs reallege the above-stated paragraphs as if fully set forth herein.

84. Plaintiffs had a valid business relationship, an expectancy to enter into a business relationship, and/or had a valid contract with Montgomery County.

85. Defendants knew that Plaintiffs had a business relationship and/or contract with Montgomery County and/or expected or intended to enter into business relationships through the tag on contract process with Montgomery County or reasonably should have known of the same. Defendants wrongfully refused to supply Spartan chassis in a timely manner to Rosenbauer for the Montgomery Agreement, and such refusal was an intentional and unjustified act of interference, which was improper.

86. Defendants' interference was a legal cause of the harm sustained by Plaintiffs.

87. As a result of Defendants' conduct, Plaintiffs have been damaged and harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief to Plaintiffs:

A. Judgment against Defendants on all Counts alleged herein and for an amount to be proven during trial;

DOCS-#4112737-V4

B.	For an award of attorney's fees, costs, disbursements, and interest as allowed under applicable law; and

C.	For such other and further relief, including equitable relief and future damages from the loss or modification of any relationships Plaintiffs have with Dealers, as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues triable of right by a jury.

Dated: May 9, 2014

LINDQUIST & VENNUM LLP

By_____
Daniel R. Fritz
Nicole O. Tupman
101 S. Reid Street, Suite 302
Sioux Falls, SD 57103
Phone: 605-978-5200
Email: dfritz@lindquist.com
ntupman@lindquist.com

*Attorneys for Plaintiffs*